UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JAMES V. MONACELLI,              :
              Plaintiff,         :
                                 :
         v.                      :         CA 11-337 S
                                 :
DIRECTOR A.T. WALL, CAPT. CLANCY, :
LT. PAQUETTE, C/O PETERS, RHODE  :
ISLAND DEPARTMENT OF CORRECTIONS, :
              Defendants.        :


**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge


Before the Court is Defendants' Motion to Dismiss (Docket ("Dkt.") #6) ("Motion to Dismiss" or "Motion"). The Motion is brought pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) and seeks dismissal of the Complaint (Dkt. #1) for allegedly failing to state any recognizable claim against Defendants. See Memorandum ("Defendants' Mem.") at 3-6.[1] The Motion has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for preliminary review, findings, and recommended disposition. The Court has determined that no hearing is necessary. After reviewing

---

[1] The pages of Defendants' Mem. are not numbered, and the Court has performed this task. Plaintiff similarly has failed to number the pages of his filings, see Complaint (Dkt. #1); Plaintiff['']s Reply to Defendants['] Motion to Dismiss (Dkt. #9) ("Plaintiff's Objection"), and the Court has also performed this task with respect to those filings. The parties are reminded that District of Rhode Island Local Rule ("DRI LR") Cv 5(a)(3) provides in relevant part: "Where a document is more than one page in length, the pages shall be numbered at the bottom center of each page." DRI LR Cv 5(a)(3).

the filings and performing independent research, I recommend that the Motion to Dismiss be granted as to all Defendants except Lieutenant Paquette.

## I.   Facts[2]

This is an action brought pursuant to 42 U.S.C. § 1983[3] by Plaintiff James V. Monacelli ("Plaintiff") for alleged violations of his civil rights while in the custody of the Rhode Island Department of Corrections at the Intake Service Center[4] and Medium I security facilities.   See Complaint at 1-2, 7-13.   Plaintiff seeks declaratory and injunctive relief as well as compensatory and

---

[2] The facts are taken from Plaintiff's Complaint which for purposes of determining the instant Motion are assumed to be true.

[3] 42 U.S.C. § 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

[4] In at least one instance the Complaint refers to this facility as the "Intake Security Center," Complaint at 2, but the website for the Rhode Island Department of Corrections identifies the facility as the "Anthony P. Travisono Intake Service Center."

punitive damages.  See id. at 15.

Plaintiff alleges that following a court hearing on February 24, 2009,[5] he "returned to prison and was immediately transferred to E-Block."  Complaint at 4.  Sometime thereafter, Plaintiff states that he witnessed "a physical confrontation,"[6] id. at 5, between another inmate and correctional officers which resulted in the inmate receiving serious injuries, see id.  This caused Plaintiff to become fearful and anxious, and he wrote to the deputy warden.  See id.  Although the Complaint does not state the contents of his letter, it can be inferred that the letter was about the incident and Plaintiff's desire to have the matter investigated.  See id.

Plaintiff alleges that shortly after sending the letter, he began to experience acts of retaliation.  See id. at 5-6.  He believed that superior officers were "behind" this retaliation, and he was concerned by this fact.  Id. at 6.  Plaintiff was "moved around," id., and eventually paired with inmate Mark Smith ("Smith").  Id.  Smith suffered from scabies, a skin condition.[7]

---

[5] The Complaint does not explicitly state that the court hearing occurred in 2009.  See Complaint at 4.  The Court infers the year from other statements in the Complaint.  See id. at 3-4.

[6] Plaintiff does not explicitly state that he witnessed "the physical confrontation," Complaint at 5, but it can be reasonably inferred that he saw and/or heard at least part of it, see id.

[7] Scabies is:

a contagious dermatitis of humans and various wild and domestic animals (see *mange*) caused by the itch mite,

Id. Plaintiff alleges that Smith failed to receive any treatment from the prison's medical personnel until Plaintiff told a few correctional officers that they could unknowingly transmit the itch mite which caused the scabies to their families. Id. at 6-7. Shortly after imparting this information, Smith was seen by the nursing staff and given medication to apply at night and wash off in the morning. Id. at 7. Reading the Complaint generously, the nursing staff also stressed the importance of having clean linen and clothing. Plaintiff alleges that these items were not provided. Id. As a result, he and Smith "remained,"[8] id., infected with scabies.

Soon after becoming infected, Plaintiff was involved in a "confrontation," id., although he does not state with whom, see id. Presumably, it was with another inmate. See id. Plaintiff alleges that Lt. Paquette caused the confrontation by recklessly informing inmates of Plaintiff's cellblock that he was an informant and "directly reinforc[ing] this notion on three separate occasions."

---

> *Sarcoptes scabiei*, transmitted by close contact, and characterized by a papular eruption over tiny, raised sinuous burrows (cuniculi) produced by digging into the upper layer of the epidermis by the egg-laying female mite, which is accompanied by intense pruritus [itching] and sometimes associated with eczema from scratching and secondary bacterial infection.

Dorland's Illustrated Medical Dictionary 1487 (28th ed. 1994).

[8] Plaintiff does not explicitly state when be became infected with scabies. See Complaint at 6-7. Presumably, it was after being assigned to the cell with Smith. See id.

4

Id.  Because of the confrontation, Plaintiff was sent to segregation where he was denied a shower for eleven consecutive days.[9]  Id.  In addition, Plaintiff was denied hygiene products such as soap, shampoo, and toothpaste.  Id. at 8.  Plaintiff also alleges that while in segregation his food was tampered with in that on a day that oranges were served "mine arrived with just the [o]range peels, absent of any fruit."  Id.  He avers that this tampering "could only have been done by staff working the segregation post."  Id.

While in segregation, Plaintiff was assigned a cell with Eugene Nobre ("Nobre"), an inmate who recently had been bitten by a correctional officer.  Id.  According to Plaintiff, the bite bled and oozed a pinkish liquid the entire time he shared a cell with Nobre.  Id.  The liquid got on the sheets, sink, walls, door, desk, and window frame.  Id. at 9.  Plaintiff repeatedly asked for cleaning products to keep the cell safe from infectious diseases, but his requests were denied.  Id.  He also alleges that he was "denied grievances regarding the living conditions, as well as listening to inmate Nobre's constant moans of agony because the correctional officers, as well as the [n]ursing staff's refusal to allow him a sling provided to him by a doctor at an outside

_____

[9] Plaintiff alleges that: "Showers are normally allowed after your first five days.  Unfortunately, I was even denied a court shower, which is always allowed an inmate the night before court, regardless of how many consecutive days you have been in segregation."  Complaint at 7-8.

hospital." Id.

Plaintiff started writing to the warden and internal affairs about the situation. Id. at 10. Approximately seven to ten days later, Plaintiff was taken to the internal affairs office to speak with Inspector John Lopez ("Inspector Lopez"). Id. However, Inspector Lopez only spoke to Plaintiff for five minutes and failed to document anything regarding the conditions which Nobre and Plaintiff were experiencing. Id. When Plaintiff attempted to ask why his numerous requests for formal grievances were ignored, Inspector Lopez abruptly escorted Plaintiff from the office. Id.

Eventually, "after lying in segregation for so long, infested with scabies ...,"[10] id., Plaintiff developed "multiple lesions of MRSA,"[11] id. at 10-11. He was treated for this condition and most of the boil-like lesions dissipated. Id. at 11. A short while after writing letters to the deputy warden and "speaking further to the prison Ministry," id., Plaintiff was classified to "Medium I," id., and transferred. After arriving at the Donald Price Facility, id., Plaintiff's MSRA flared up and numerous boil-like lesions started to re-appear on his body. Id. Plaintiff asked numerous times to see the doctor. Id. On several occasions his name was

---

[10] It is unclear from the Complaint how long Plaintiff was in segregation.

[11] MRSA presumably refers to methicillin-resistant Staphylococcus aureus, a type (strain) of staph bacteria that does not respond to some antibiotics. See Mayo Clinic, http://www.mayoclinic.com/health/mrsa/ DS00735 (last visited March 30, 2012).

placed on the emergency list, but his name was repeatedly skipped over. Id. at 11. He submitted at least twelve "slips" to the hospital and also multiple requests to area lieutenants and captains. Id. Although the latter individuals repeatedly told Plaintiff that they would see to it, he was not seen by a doctor. Id.

Sometime around the end of August, Plaintiff asked to see the warden. Id. However, Plaintiff was seen instead by Captain Amaral ("Capt. Amaral") who told him that he was aware of Plaintiff's medical needs and would personally look into the matter. Id. at 11-12. However, Plaintiff alleges that Capt. Amaral failed to do so. Id. at 12. As a result, Plaintiff submitted a formal grievance. Id. Plaintiff further alleges that he was told by Captain Lefebre ("Capt. Lefebre.") that if Plaintiff wrote out a slip to the medical director, Capt. Lefebre would deliver it personally. Id. Plaintiff did so, but received no positive result. Id.

The day before Plaintiff was released from prison, he saw the doctor "for five minutes and was given a tiny paper pill cup with a very small amount of Neosporin, which did nothing to alleviate the agony [he] was in." Id. Within days of leaving prison, Plaintiff was admitted to Rhode Island Hospital and underwent surgery to remove infectious tissue from his right leg. Id. He received a large amount of antibiotics. Id. After being released

from the hospital, he continued to take three antibiotic medications. Id. On several occasions he returned to the hospital for intravenous medication "to combat this aggressive infection that the Rhode Island Department of Corrections not only neglected, but purposely caused." Id.

## II. Travel

Plaintiff's Complaint was received by the Clerk's Office on August 1, 2011. See Dkt. Defendants filed the instant Motion to Dismiss on November 10, 2011. See id. On December 1, 2011, the Court granted Plaintiff an extension of time to file a response to the Motion up to and including December 22, 2011. See Order Granting Plaintiff Additional Time to File Response (Dkt. #8) ("Order of 12/1/11"). The Court took this action in deference to Plaintiff's *pro se* status and the fact that he had requested the appointment of counsel, see Motion to Appoint Counsel (Dkt. #4), which request had been denied. See Order of 12/1/11 at 1. Plaintiff did not file a response by the December 22nd deadline but did so on January 19, 2012. See Plaintiff['']s Reply to Defendants['] Motion to Dismiss (Dkt. #9) ("Plaintiff's Objection"). After reviewing it, the Court determined that no hearing on the Motion was necessary and took the matter under advisement.

## III. Law

### A. *Pro Se* Status

Plaintiff is proceeding *pro se*, and his Complaint is held to

a less stringent standard than one drafted by a lawyer.  See Haines
v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594 (1972).  It is to be
"read ... with an extra degree of solicitude."  Rodi v. Ventetuolo,
941 F.2d 22, 23 (1st Cir. 1991); see also United States v. Genao,
281 F.3d 305, 313 (1st Cir. 2002)("[C]ourts should read pro se
complaints less strictly than lawyer-drafted pleadings").  The
Court is required to liberally construe a *pro se* complaint.  See
Strahan v. Coxe, 127 F.3d 155, 158 n.1 (1st Cir. 1997); Watson v.
Caton, 984 F.2d 537, 539 (1st Cir. 1993).  At the same time, a
plaintiff's *pro se* status does not excuse him from complying with
procedural rules.  See Instituto de Educacion Universal Corp. v.
U.S. Dep't of Educ., 209 F.3d 18, 24 n.4 (1st Cir. 2000).

The First Circuit summarized the above law in Dutil v. Murphy,
550 F.3d 154 (1st Cir. 2008).  "[A]s a general rule, we are
solicitous of the obstacles that pro se litigants face, and while
such litigants are not exempt from procedural rules, we hold pro se
pleadings to less demanding standards than those drafted by lawyers
and endeavor, within reasonable limits, to guard against the loss
of pro se claims due to technical defects."  Id. at 158 (citing
Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000)(citing Haines, 404
U.S. at 520; Instituto de Educacion Universal Corp., 209 F.3d at
23)).

## B.  Rule 12(b)(6) Standard

"In order to survive a motion to dismiss, a complaint must

allege 'a plausible entitlement to relief.'" <u>ACA Fin. Guar. Corp. v. Advest, Inc.</u>, 512 F.3d 46, 58 (1st Cir. 2008)(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 559, 127 S.Ct. 1955 (2007)). This pleading standard applies to all civil actions. <u>Ashcroft v. Iqbal</u>, 556 U.S. ___, 129 S.Ct. 1937, 1953 (2009).

Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." <u>Iqbal</u>, 129 S.Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555)(alteration in original). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 557).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 570); <u>see also</u> <u>Sepúlveda-Villarini v. Dep't of Educ. of Puerto Rico</u>, 628 F.3d 25, 29 (1st Cir. 2010)("The make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.")

(citing <u>Iqbal</u>, 129 S.Ct. at 1950-51).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  <u>Sepúlveda-Villarini</u>, 628 F.3d at 29 (citing <u>Iqbal</u>, 129 S.Ct. at 1949).  The plausibility standard is not akin to a "probability requirement," <u>id.</u>, but it asks for more than a sheer possibility that a defendant has acted unlawfully, <u>id.</u>  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  <u>Iqbal</u>, 129 S.Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 557).

In <u>Iqbal</u>, the Supreme Court explained that two working principles underlay its decision in <u>Twombly</u>.  <u>Id.</u>  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  <u>Id.</u>  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555).  Thus, although for the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Id.</u> at 1949-50.  While Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, it does not

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Id. at 1950. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id. (citing Twombly, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Id. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"— "that the pleader is entitled to relief." Id. (quoting Fed. R. Civ. P. 8(a)(2))(alteration in original). At the same time, "Twombly cautioned against thinking of plausibility as a standard of likely success on the merits; the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor." Sepúlveda-Villarini, 628 F.3d at 30.

A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. Iqbal, 129 S.Ct. at 1950. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Id. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. The Iqbal court cited its analysis in Twombly as illustrative of this

"two-pronged approach."  Id.

## C.  Standard for Injunctive Relief

Plaintiff, as the moving party, has the burden of persuasion to demonstrate by a clear showing: (1) that he has a substantial likelihood of success on the merits; (2) that he faces a significant risk of irreparable harm if the injunction is denied; (3) that the harm he will suffer outweighs any harm to Defendants if the injunction is granted; and (4) that the granting of prompt injunctive relief will promote (or, at least, not denigrate) the public interest.  McGuire v. Reilly, 260 F.3d 36, 42 (1st Cir. 2001); see also Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S.Ct. 1865 (1997)(requiring preliminary injunction movant to carry the burden of persuasion "*by a clear showing*").  Of the four factors, the likelihood of success on the merits is of primary importance. See Esso Standard Oil Co. (Puerto Rico) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006)("The sine qua non of this four-part inquiry is likelihood of success on the merits; if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity."); see also Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 46 (1st Cir. 2005).

## IV. Discussion

### A.  Individual Defendants Sued in Their Official Capacities

The Complaint alleges that each individual Defendant (Director

13

A.T. Wall, the unidentified warden of the Intake Service Center,[12] Lt. Paquette, and Correctional Officer Peters) is sued individually and in his official capacity.  <u>See</u> Complaint at 2-3.  To the extent that the Complaint seeks money damages from these Defendants based on acts or omissions in their official capacities, it fails to state a claim upon which relief can be granted.  <u>See</u> <u>Nieves-Márquez v. Puerto Rico</u>, 353 F.3d 108, 124 (1st Cir. 2003)("No cause of action for damages is stated under 42 U.S.C. § 1983 against a state, its agency, or its officials acting in an official capacity.")(citing <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71, 109 S.Ct. 2304 (1989)); <u>Johnson v. Rodriguez</u>, 943 F.2d 104, 108 (1st Cir. 1991)("It is settled beyond peradventure ... that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action.")(citing <u>Will</u>).

     In <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 109 S.Ct. 2304 (1989), the Supreme Court addressed "the question whether a State, or an official of the State while acting in his or her official capacity, is a 'person' within the meaning of ... 42 U.S.C. § 1983."  491 U.S. at 60.  The Court held that "neither a State nor its officials acting in their official capacities are

---

[12] The caption of the Complaint does not indicate that the warden of the Intake Service Center is a defendant in this action.  In treating him as such, the Court overlooks Plaintiff's noncompliance with DRI LR Cv 5(a)(1) which requires that "[a]ny pleading or other document  asserting a claim or counterclaim of any type shall include the full caption showing the names of all parties."  DRI LR Cv 5(a)(1).

'persons' under § 1983." Id. at 71; see also Jones v. Rhode Island, 724 F.Supp. 25, 28 (D.R.I. 1989)("Based on the Supreme Court's holding in Will, it is clear that neither the state of Rhode Island nor any of its officials acting in their official capacities, are 'persons' that can be held liable under § 1983."). The Will Court explained that:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

491 U.S. at 66 (internal citation omitted). Regarding state officials acting in their official capacities, the Supreme Court stated: "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."[13] Id. at 71 (internal citation omitted). Thus, Plaintiff's claims for monetary damages against the individual

---

[13] The Supreme Court further noted that "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10, 109 S.Ct. 2304 (1989)(internal quotation marks omitted). However, as will be discussed, see Discussion section IV.D. infra at 28-30, Plaintiff has not met the criteria for injunctive relief.

Defendants in their official capacities are barred.[14]

## B. Rhode Island Department of Corrections

All of Plaintiff's claims against the Rhode Island Department of Corrections ("RIDOC") are barred by sovereign immunity. See Poirier v. Massachusetts Dep't of Corr., 558 F.3d 92, 97 (1st Cir. 2009)(affirming dismissal of § 1983 suit brought against department of corrections because "[s]tates and their agencies are entitled to sovereign immunity 'regardless of the relief sought'")(quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14, 105 S.Ct. 3099 (1985)); Johnson, 943 F.2d at 108 (stating that it is "settled" that a state agency may not be sued for damages in a § 1983 action).

## C. Individual Defendants in Their Individual Capacities

### 1. Director A.T. Wall

Other than in the caption, A.T. Wall ("Director Wall") is mentioned in the Complaint only in a single paragraph. That paragraph states:

> Defendant, A.T. Wall was, and is, the Director of the Department of Corrections, in the State of Rhode Island. He is, and was, legally responsible for the overall operations within the Rhode Island Department of Corrections, and each Institution under its jurisdiction, including the Intake Service Center, and also the Medium I Facility.

Complaint at 2. However, the fact that Director Wall headed the RIDOC while Plaintiff was in its custody does not make Director

---

[14] Captain Clancy ("Capt. Clancy") is not named in the Complaint except in the caption. Thus, the Complaint fails to state a claim against him/her in any capacity.

Wall "liable merely on that account; there is no *respondeat superior* liability under section 1983." Ayala-Rodríguez v. Rullán, 511 F.3d 232, 236 (1st Cir. 2007); see also Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 502 (1st Cir. 2011)("reiterating the principle that government officials may be held liable only 'on the basis of their own acts or omissions,' and not 'for the unconstitutional conduct of their subordinates under a theory of respondeat superior'")(quoting Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009)(quoting Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S.Ct. 1937, 1948 (2009))); Martinez-Vélez v. Rey-Hernández, 506 F.3d 32, 41 (1st Cir. 2007) ("Section 1983 does not impose purely supervisory liability."); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)("Although a superior officer cannot be held vicariously liable under 42 U.S.C. § 1983 on a *respondeat superior* theory, he may be found liable under section 1983 on the basis of his own acts or omissions.")(internal citations omitted).[15]

---

[15] Plaintiff seemingly argues to the contrary. See Plaintiff's Objection at 1 ("Regardless of the[ir] direct or indirect involvement, [Director Wall and the warden] are both responsible for the safety and wellbeing of each and every inmate committed to the Intake Service Center."). However, the fact that Director Wall and the warden may have such responsibility is not by itself sufficient to impose liability under 42 U.S.C. § 1983. See Ayala-Rodríguez v. Rullán, 511 F.3d 232, 236 (1st Cir. 2007)("That [defendant] headed the department does not make him liable merely on that account; there is no *respondeat superior* liability under section 1983."); Martinez-Vélez v. Rey-Hernández, 506 F.3d 32, 41 (1st Cir. 2007) (explaining that "Section 1983 ... aims at persons who have actually abused their positions of authority")(internal quotation marks omitted); see also Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 502 (1st Cir. 2011)("It is axiomatic that the liability of persons

In the context of a section 1983 action, supervisory liability typically arises in one of two ways: either the supervisor may be a "primary violator or direct participant in the rights-violating incident," or liability may attach "if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation." Sanchez, 590 F.3d at 49 (quoting Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999)). In the latter instance, the analysis focuses on "whether the supervisor's actions displayed deliberate indifference toward the rights of third parties and has some causal connection to the subsequent tort."[16] Id. (quoting Camilo-Robles, 175 F.3d at 44). In either case, the plaintiff in a section 1983 action must show "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization," id., between the actor and the underlying violation, id.; see also Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011)("[A] supervisor may not be held liable for the constitutional violations committed by his or her subordinates, unless there is an affirmative link between the

---

sued in their individual capacities under section 1983 must be gauged in terms of their own actions.").

   [16] Thus, officers "can be held liable for the acts of their subordinates if they engaged in supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference, but that is a demanding standard." Martínez-Vélez, 506 F.3d at 41 n.5 (internal citations and quotation marks omitted).

behavior of a subordinate and the action or inaction of his supervisor ... such that the supervisor's conduct led inexorably to the constitutional violation.")(alterations in original)(internal quotation marks omitted).

Here there is no suggestion that Director Wall was a primary actor or direct participant in any of the events about which Plaintiff complains. <u>See</u> Complaint. Indeed, Plaintiff admits this. <u>See</u> Plaintiff's Objection at 1 ("Plaintiff doesn't make mention of the Director or the Warden because they were not directly involved, with the exception of the one letter I wrote to the Warden regarding the conditions of my confinement, and also the abuses that were taking place while in segregation."). Thus, the first scenario for supervisory liability is not present.

Turning to the second scenario, the Complaint only alleges that Director Wall was responsible for the operations of the RIDOC and its facilities. Plaintiff has not alleged any facts to show that Director Wall supervised, trained, or hired a subordinate with deliberate indifference toward the possibility that deficient performance of any of those tasks eventually contributed to any civil rights violation alleged by Plaintiff. <u>See</u> <u>Sanchez</u>, 590 F.3d at 49; <u>cf.</u> <u>id.</u> at 49-50 (holding that "[t]he deliberate indifference required to establish a supervisory liability/failure to train claim cannot plausibly be inferred from the mere existence of a poorly-implemented strip search or x-ray policy and a bald

asserotion that surgery somehow resulted from those policies"). Most glaringly, Plaintiff has not alleged any facts to show "an affirmative link," <u>Feliciano-Hernández</u>, 663 F.3d at 533, between the behavior of a subordinate and the action or inaction of Director Wall such that Director Wall's conduct led inexorably to the constitutional violation, <u>see</u> <u>id.</u> Accordingly, Plaintiff's allegations against Director Wall fail to state a plausible claim for relief, and therefore, he should be dismissed from this action. <u>See</u> <u>Iqbal</u>, 129 S.Ct. at 1950 ("only a complaint that states a plausible claim for relief survives a motion to dismiss"). I so recommend.

### 2. Captain Clancy

As already noted, Capt. Clancy's name only appears in the caption of the Complaint, but the pleading contains no allegations against him/her. <u>See</u> n.14. He/she is not identified as a defendant in Section III of the Complaint entitled "Defendants." Complaint at 2. Accordingly, the Complaint fails to state a claim against Capt. Clancy upon which relief may be granted, and he/she should be dismissed from the action. I so recommend.

### 3. Warden of Intake Service Center

Plaintiff's allegations against the warden of the Intake Service Center are similar to those he made against Director Wall. Plaintiff alleges that the warden "is legally responsible for the operation of the Intake Security [sic] Center, as well as the

welfare of the inmate population of that prison." Complaint at 2.
Plaintiff additionally alleges that he wrote to the warden during
the time Plaintiff was confined in the same cell as Nobre, the
inmate with the open wound. See id. at 10. As previously
indicated, the Court will assume that the letter was about the
living conditions which Plaintiff and Nobre were experiencing. See
id.

     Plaintiff, however, does not allege that the warden ignored
his communication or failed to respond. To the contrary, Plaintiff
alleges that approximately a week after writing to the warden, he
was seen by multiple captains and lieutenants and was also taken to
see Inspector Lopez. Id. at 10. While Plaintiff states that he
did not obtain any relief from these individuals, it can reasonably
be inferred that the reason Plaintiff saw at least some of them was
his letter to the warden. This tends to negate any claim that the
warden acted "with deliberate indifference," Sanchez, 590 F.3d at
49, toward the possibility that deficient performance of his
supervisory responsibilities could contribute to Plaintiff being
deprived of his civil rights, see id.

    The only other mention of the warden in the Complaint is that
"[s]ome time around the end of August," id. at 11, Plaintiff
requested to see the warden, but instead was seen by Capt. Amaral,
id. This allegation cannot be the basis for imposing any liability
on the warden. In short, Plaintiff's allegations regarding the

warden, like those against Director Wall, do not show that the warden was a primary actor or direct participant in the alleged rights violation. They also do not state facts to show that the warden supervised, trained, or hired a subordinate with deliberate indifference toward the possibility that deficient performance of any of these tasks might contribute to a deprivation of Plaintiff's civil rights. See Sanchez, 590 F.3d at 49. Thus, the Complaint fails to contain sufficient factual matter, accepted as true, to state a claim against the warden that is plausible on its face. See Iqbal, 129 S.Ct. at 1949. Therefore, the warden should be dismissed as a defendant. I so recommend.

### 4. Lt. Paquette

Plaintiff alleges that Lt. Paquette "is and was, a superior officer of [RIDOC] who, at all times mentioned in this complaint, [was] assigned to the Intake Service Center." Complaint at 3. The only other reference to Paquette in the Complaint is the allegation that Plaintiff "was involved in a confrontation directly caused by Lt. Paquette's unprofessional, and reckless act of informing the Block [Plaintiff] was residing on, that [Plaintiff] was an informant, and directly reinforced this notion on three separate occasions." Id. at 7.

A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment. Mosher v. Nelson, 589 F.3d 488, 493 (1st Cir. 2009)(citing Farmer

v. Brennan, 511 U.S. 825, 828, 114 S.Ct. 1970 (1994)). "Courts have long held that prison officials who identify an inmate as a 'snitch' to other inmates, with intent to provoke an assault or the fear of assault, demonstrate deliberate indifference to the inmate's safety and may be liable under the Eighth Amendment." McPherson v. Beckstrom, Civil Action No. 0:010-00108-HRW, 2011 WL 13649, at *4 (E.D. Ky. Jan. 4, 2011)(citing, among other cases, Farmer, 511 U.S. at 833; Comstock v. McCrary, 273 F.3d 693, 699 n.2 (6th Cir. 2001)); see also Benefield v. McDowall, 241 F.3d 1267, 1271 (10th Cir. 2001)(noting its own prior holding and stating that "[o]ther circuits have also recognized that labeling an inmate a snitch has the potential for great harm and may violate the constitutional guarantees"); Edwards v. Dwyer, No. 1:06-CV-1 CAS, 2008 WL 4643946, at *4 (E.D. Mo. Oct. 20, 2008)("The Eighth Circuit has 'recognized that an inmate who is considered to be a snitch is in danger of being assaulted or killed by other inmates.'")(quoting Irving v. Dormire, 519 F.3d 441, 450 (8th Cir. 2008)).

Nevertheless, the Complaint must give a "defendant fair notice of what the ... claim is and the grounds upon which it rests ...." Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (first alteration in original); see also Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011)("an adequate complaint must provide fair notice to the defendants and state a facially plausible claim"). The Complaint "must at least set forth minimal facts as to who did what

to whom, when, where, and why." <u>Ruiz-Rosa v. Rullán</u>, 485 F.3d 150, 154 (1st Cir. 2007)(internal quotation marks omitted). Here, the "when" is extremely difficult to discern from the Complaint. Plaintiff provides no date or approximate date for when Lt. Paquette allegedly informed Plaintiff's cellblock that Plaintiff was an informant. It is not even possible to identify with any degree of certainty the year in which the alleged act occurred. The most that can be reasonably deduced from the present Complaint is that the alleged statement by Lt. Paquette was made sometime between Plaintiff's return to prison on December 9, 2008,[17] and his release from prison presumably in 2010 or 2011.[18] While Plaintiff may not be able to state a precise date that the statement was made by Lt. Paquette, Plaintiff certainly should have the ability to greatly narrow the approximate time period during which Lt. Paquette allegedly made the statement.

Accordingly, the Court finds that the allegations against Lt. Paquette in the Complaint do not provide him with fair notice of the claim against him. However, in deference to Plaintiff's *pro se* status, I recommend that Plaintiff be allowed to file an amended

---

[17] Even this date requires an assumption that the year was 2008 because the Complaint only states that Plaintiff "returned to prison on December 9th and eventually was sentenced to serve 2 years on a violation." Complaint at 4. The Court assumes that the year was 2008 because the previous date stated in the Complaint is "June 10th, 2008." <u>Id.</u> at 3.

[18] The assumption that Plaintiff was released in either 2010 or 2011 is based on his statement that he "was sentenced to serve 2 years on a violation." <u>Id.</u> at 4.

complaint which states when Lt. Paquette allegedly informed the cellblock on which Plaintiff was residing that he was an informant and when (and how) Lt. Paquette "reinforced this notion on three separate occasions."[19] Complaint at 7; cf. Mendez v. Bick, No. CIV S-06-2184 FCD KJM P, 2007 WL 738751, at *3 (E.D. Cal. Mar. 7, 2007)(granting leave to state prison inmate, who alleged that he had been put in danger because an unnamed correctional officer had told other inmates that he had worked as an informant, to amend portion of complaint and name the person he alleged was responsible for putting him in danger).

### 5. Correctional Officer Peters

Correctional Officer Peters ("Peters") in not mentioned in the Complaint except to identify him as a defendant: "Defendant, Correctional Officer Peters, is and was, a member of the [RIDOC], who at all time[s] was assigned to the Intake Security [sic] Center." Complaint at 3. Thus, the Complaint fails to provide fair notice to Peters of the claims against him and the basis for those claims. See Ruiz-Rosa, 485 F.3d at 154. Accordingly, he is entitled to dismissal from this action, and I so recommend.

Even if the Court were to consider the information contained

---

[19] Plaintiff's amended complaint should be titled "Amended Complaint" and is *only* to clarify when Lt. Paquette allegedly informed the cellblock that Plaintiff was an informant and when and how Lt. Paquette reinforced this information on three occasions. Complaint at 7. If Plaintiff wishes to make any other changes to his original Complaint, he must file a motion for leave to do so.

in Plaintiff's belated response to the Motion, the result would be no different. In that response, Plaintiff states:

> Correctional Officer Peters made the choice to disregard
> a written order from the prison doctor to afford inmate
> Mark Smith clean linen and clothing that morning after he
> showered, even after I pleaded with him and explained the
> importance of inmate Mark Smith's needs. His only
> response was "sorry, the laundry is closed." and moments
> later, adding insult to injury, "how nice of you to care
> about your roommate so much" while he and C/O Rouso, who
> was in the control center, had a good laugh at what was
> occurring.

Plaintiff's Objection at 1-2. As explained hereafter, even accepting these facts as true, they do not sink to the level of "deliberate indifference to a serious medical need," <u>DesRosiers v. Moran</u>, 949 F.2d 15, 18 (1ˢᵗ Cir. 1991), which is necessary to allege a violation by prison officials of the Eighth Amendment's prohibition against the infliction of "cruel and unusual punishment," <u>id.</u>

"Deliberate indifference is conduct that offends evolving standards of decency in a civilized society." <u>Id.</u> (citing <u>Rhodes v. Chapman</u>, 454 U.S. 337, 347, 101 S.Ct. 2392 (1981)). "[I]t has both an objective component (was there a sufficiently serious deprivation?) and a subjective component (was the deprivation brought about in wanton disregard of the inmate's rights?)." <u>Id.</u> In practice, these components may overlap or merge. <u>Id.</u> at 18-19.

The First Circuit has stated that:

> For medical treatment in prison to offend the
> Constitution, the care must involve acts or omissions
> sufficiently harmful to evidence deliberate indifference

to serious medical needs.

Deliberate indifference in this context may be shown by the denial of needed care as punishment and by decisions about medical care made recklessly with actual knowledge of impending harm, easily preventable. Deliberate indifference means that a prison official subjectively must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. **Therefore, substandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation.**

<u>Ruiz-Rosa</u>, 485 F.3d at 156 (bold added) (citations and internal quotation marks omitted).

Correctional Officer Peters' failure to provide clean linens and clothing to Plaintiff's cellmate on a single morning, even assuming that such failure was intentional, does not constitute "deliberate indifference to a serious medical need," <u>id.</u> at 18, of *Plaintiff's*, <u>see</u> <u>Gutierrez v. Peters</u>, 111 F.3d 1364, 1375 (7th Cir. 1997)(finding that two instances of delay in providing treatment for infected cyst over a ten-month period "were simply isolated instances of neglect" and could not support "a finding of deliberate indifference"); <u>Cullins v. Nelson</u>, No. 09 C 1797, 2010 WL 1930122, at *5 (N.D. Ill. May 13, 2010)("isolated incidents of delay do not rise to the level of deliberate indifference"); <u>Goodall v. Jacobson</u>, No. CV-08-5023-CI, 2010 WL 889965, at *6 (E.D. Wash. Mar. 8, 2010)(finding that prison officials' failure to act on plaintiff's unconfirmed statements that he had a history of seizures and was supposed to have a lower bunk until after he fell

from top bunk following a seizure was an "isolated incident" which did not constitute deliberate indifference); cf. Mubita v. Latah Cnty. Jailers, No. CV07-62-S-EJL, 2009 WL 3271162, at *10 (D. Idaho Oct. 8, 2009)(assuming that disinfectant inmate was provided to clean his cell caused a respiratory irritation and finding that "the nature of this isolated incident does not rise to the level of deliberate indifference").

### D.  Motion for Injunction

Plaintiff seeks a preliminary and permanent injunction ordering "defendants, Dir. A.T. Wall, Warden, Internal Affairs, and Superior Officers at the Intake Security [sic] Center to stop restricting, objecting to, and punishing inmates who attempt to access a Formal Grievance Process."[20]  Complaint at 15.  Given the fact that the Court has recommended that the Complaint should be dismissed as to all Defendants except Lt. Paquette, I find that Plaintiff has not shown a substantial likelihood of success on the

---

[20] To the extent that Plaintiff seeks injunctive relief against "Internal Affairs, and Superior Officers of the Intake Security [sic] Center," Complaint at 15, such relief cannot be granted as the Court does not have jurisdiction over persons or entities not named as defendants in the Complaint.  See Complaint at 2-3; see also Calbart v. Denver Sheriff Dep't, Civil Action No. 10-cv-01385-LTB-CBS, 2011 WL 805765, at *2 (D. Colo. Feb. 8, 2011)(recommending that injunction be denied where plaintiff's request for injunctive relief was not directed "at the named Defendants"); Cycenas v. Flanigan, No. 10-cv-253-bbc, 2010 WL 2594837, at *1 (W.D. Wis. June 24, 2010)("The parties from whom plaintiff seeks an injunction are not named as defendant[s] to this lawsuit.  Plaintiff cannot ask for injunctive relief from unnamed defendants."); cf. Daniels v. Southfort, 6 F.3d 482, 484 (7th Cir. 1993)("the allegations against the unnamed officers cannot support injunctive relief against the named defendants").

merits as to all named Defendants except Lt. Paquette.[21]
Accordingly, Plaintiff's request for preliminary and permanent
injunction should be denied as to all Defendants except Lt.
Paquette. <u>See</u> <u>Penn v. San Juan Hosp., Inc.</u>, 528 F.2d 1181, 1185
(10th Cir. 1975)(noting that movant must establish his right to
injunctive relief "by clear proof that he will probably prevail
when the merits are tried"); <u>L.L. Bean, Inc. v. Bank of America</u>,
630 F.Supp.2d 83, 89 (D. Me. 2009)("[M]andatory preliminary relief
is subject to heightened scrutiny and should not be issued unless
the facts and the law clearly favor the moving party.")(quoting
<u>Dahl v. HEM Pharm. Corp.</u>, 7 F.3d 1399, 1403 (9th Cir. 1993))
(alteration in original); <u>see also</u> <u>Snyder v. Millersville Univ.</u>,
Civil Action No. 07-1660, 2008 WL 5093140, at *11 (E.D. Pa. Dec. 3,
2008)("Mandatory injunctions, which require defendants to take some
affirmative action, are 'looked upon disfavorably and are generally
only granted in compelling circumstances.'")(quoting <u>Florham Park</u>
<u>Chevron, Inc. v. Chevron U.S.A., Inc.</u>, 680 F.Supp. 159, 166 (D.N.J.
1988)); <u>Burgos v. Univ. of Cent. Fla. Bd. of Trustees</u>, 283
F.Supp.2d 1268, 1271 (M.D. Fla. 2003)("A mandatory preliminary
injunction requiring defendant to take affirmative action is proper
only in 'rare instances.'") (quoting <u>Harris v. Wilters</u>, 596 F.2d
678, 680 (5th Cir. 1979)). I so recommend.

---

[21] As noted previously, the most important factor to be considered
is likelihood of success on the merits. <u>See</u> <u>Esso Standard Oil Co.</u>
<u>(Puerto Rico) v. Monroig-Zayas</u>, 445 F.3d at 18.

With respect to Lt. Paquette, Plaintiff's request that this Defendant be preliminarily and permanently enjoined from restricting, objecting to, and punishing inmates who attempt to access the formal grievance process bears no resemblance to the claim presented in the Complaint that Lt. Paquette "inform[ed] the Block ... that [Plaintiff] was an informant, and directly reinforced this notion on three separate occasions." Complaint at 7; see also Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994)("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.").

Accordingly, the Court finds that Plaintiff has not demonstrated a substantial likelihood of success on the merits with respect to a claim against Lt. Paquette for injunctive relief. Thus, to the extent that the Complaint seeks injunctive relief, it should be denied as to all Defendants. I so recommend.

**V.    Conclusion**

For the reasons stated above, I recommend that the Motion to Dismiss be granted as to all Defendants and all claims except as to the claim against Lt. Paquette in his individual capacity based on his allegedly informing the inmates on Plaintiff's cellblock that Plaintiff was an informant. However, because the allegations in the Complaint do not provide Lt. Paquette with fair notice of the claim, I recommend that Plaintiff be ordered to file an amended

complaint which states when Lt. Paquette allegedly imparted the information to other inmates that Plaintiff was an informant and when and how Lt. Paquette "reinforced this notion on three separate occasions." Complaint at 7. To the extent that the Complaint seeks injunctive relief, I recommend that it be dismissed.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
April 2, 2012